UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) |
| Plaintiff, | ) )  Case No.: 2:22-cv-01258-GMN-NJK ) |
| vs. | )  **ORDER** ) |
| DANIEL SHAK, | ) ) |
| Defendant. | ) ) |

Pending before the Court is the Motion to Dismiss (ECF No. 5), filed by Defendant, Daniel Shak ("Defendant" or "Shak"). Plaintiff Commodity Futures Trading Commission (the "Commission" or "CFTC") filed a Response (ECF No. 13), to which Defendant filed a Reply, (ECF No. 17).

Also pending before the Court is the Commission's First Motion for Leave to File Document, (ECF No. 27). Defendant filed a Response, (ECF No. 28), to which the Commission filed a Reply, (ECF No. 29).[1] Further pending before the Court is the Commission's Second Motion for Leave to File Document, (ECF No. 43).[2]

---

[1] The Commission seeks leave to file a recent opinion on a motion to dismiss, *CFTC v. Skudder*, No. 22-cv-925, 2022 WL 17752392 (N.D. Ill. Dec. 19, 2022), as supplemental authority in further support of its Response to Defendant's Motion. (Mot. Leave 1:14–18, ECF No. 27). Under LR 7-2(g), "A party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause." Good cause exists here because the supplemental authority did not exist when the Commission filed its Response to Defendant's Motion, and the new authority is helpful to the Court in ruling on Defendant's Motion to Dismiss. Defendant argues that the Court should nonetheless deny leave to supplement because *Skudder* is neither binding nor precedential to this Court and *Skudder* is otherwise distinguishable from the facts here. (Resp. to Mot. Leave, ECF No. 28). While the Court may consider Defendant's arguments when contemplating whether to apply *Skudder* and how much weight to give it, Defendant's arguments fail to counter the existence of good cause to file supplemental authority that could not have been included in the ordinary course of briefing.

[2] The Commission filed its Second Motion for Leave to File Document after the Court had substantially completed this Order. The Court reviewed the Commission's second Motion for Leave to File Document and

For the reasons discussed below, the Court **DENIES** the Motion to Dismiss, **GRANTS** the First Motion for Leave to File Document, and **DENIES as moot** the Second Motion for Leave to File Document.

## I. BACKGROUND

This case arises from Defendant's alleged scheme involving manipulative and deceptive trading practices for gold and silver futures contracts on the Commodity Exchange, Inc. ("COMEX"). (Compl. ¶1, EFC No. 1). On hundreds of occasions from at least February 26, 2015, through March 1, 2018 (the "Relevant Period"), Defendant allegedly entered large orders for gold or silver futures that he intended to cancel before execution (the alleged "Spoof Orders") while placing genuine orders on the opposite side of the gold or silver futures market (the "Genuine Orders"). (*Id.*). Defendant then canceled his Spoof Orders, typically after his Genuine Order on the opposite side of the market was filled. (*Id.* ¶ 31). According to the Complaint, Defendant engaged in more than 700 Spoof Events consisting of 1,808 individual Spoof Orders as part of one manipulative and deceptive "Scheme." (*Id.*).

On the gold and silver futures markets, prices will generally rise when there is more interest in buying a particular contract (i.e., the demand side) than there is in selling (i.e., the supply side); and conversely, prices will generally fall when supply exceeds demand. (Compl. ¶26). Because other market participants cannot see the originator of orders, other market participants would not know that the same trader had placed the Spoof Orders and the Genuine Orders, thereby impacting the perceived supply and demand.[3] (*Id.* ¶ 46). The Complaint states, "Shak intended his spoofing activity to put pressure on the price in the direction of his Genuine Orders, and did so with the knowledge that the price pressure would trick other market

---

found that the supplemental authority would not change the Court's decision. Accordingly, the Court DENIES the second Motion for Leave to File Document as moot.

[3] In some instances, Defendant's Genuine Orders were "icebergs," which means the size of the order was not fully visible to other market participants. (Compl. ¶ 25).

participants into filling his Genuine Orders at his desired price." (*Id.* ¶ 34). That is, by engaging in the alleged Scheme, Defendant allegedly entered Spoof Orders "either to intentionally send a false signal to the market that he actually wanted to buy or sell the number of contracts specified in those orders, or while recklessly disregarding the fact that entering these orders would send such a false signal to the market participants." (*Id.* ¶ 45).

The Complaint alleges that the timing of Defendant's orders and cancellations demonstrates his intent. Defendant canceled his Spoof Orders rapidly, with a median cancelation time for all his Spoof Orders of 11.8 seconds. (*Id.* ¶ 38). By contrast, when Defendant canceled his Genuine Orders, the median cancelation time was 55.4 seconds. (*Id.*). Defendant manually canceled his Spoof Orders quickly after receiving a fill on his corresponding Genuine Orders. (*Id.* ¶ 39).

In some instances, Defendant placed Spoof Orders in a sequence intended to minimize the possibility that the Spoof Orders would get filled. (*Id.* ¶ 40). In several Spoof Events involving multiple Spoof Orders, Defendant canceled the Spoof Order closest to the best bid or best offer—and thus at greatest risk of being filled—first, and he canceled the Spoof Order furthest from the best bid or offer—at least risk of being filled—last. (*Id.*).

The Commission alleges that "Shak's Scheme worked as designed, as reflected in vastly diverging rates in which Shak's Genuine and Spoof Orders were partially or fully filled (the 'hit rate')." (*Id.* ¶ 42). Of the 804 Genuine Orders Defendant placed during the Relevant Period, about 89% were hit. (*Id.*). By contrast, approximately 2% of the 1,808 Spoof Orders he placed were hit. (*Id.*).

To illustrate Defendant's alleged Scheme, the Complaint provides seven examples of Defendant's spoofing activity. (*Id.* ¶¶ 49–102). These examples specify when Defendant placed his Spoof and Genuine Orders, when he canceled his Spoof Orders, and the number of lots and the price of each order. (*See id.*). Additionally, each example includes a chart showing

how the bid-ask spread and sell side and buy side prices changed after Defendant placed and then canceled his Spoof Orders. (*Id.* at 19, 23, 27, 31, 34, 38, 42, 48). The charts illustrate how Defendant's alleged spoofing allowed him to fill his Genuine Orders at a better price than he otherwise might have obtained if he had not placed a series of corresponding Spoof Orders. (*See id.*); (*see, e.g.*, *id.* ¶ 60) (explaining Chart 2). Even when Defendant's Spoof Orders did not actually move the bid-ask spread, the Complaint alleges that Defendant placed the Spoof Orders with the intent to cancel them, with the intent to convey false signals of demand to the marketplace, and with the intent to apply market pressure in order to get a better price on his Genuine Orders. (*See, e.g.*, *id.* ¶ 85) (explaining Chart 5).

The Commission brings two causes of action against Defendant under the Commodity Exchange Act ("CEA") and its accompanying regulations: (1) Spoofing in violation of 7 U.S.C. § 6c(A)(5)(C); and Use of a Manipulative and Deceptive Device, Scheme, or Artifice, in violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(A)(1), (3). (Compl., ¶1, ECF No.1). Defendant now moves to dismiss.

**II.    LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). But the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden*

*State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Rule 9(b) requires that claims of fraud be accompanied by the "who, what, when, where, and how" of the conduct charged. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).  In other words, the complaint "must include 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quoting *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)) (internal quotations omitted).  Rule 9(b)'s particularity requirement ensures that defendants are on "notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (quoting *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

### III.   DISCUSSION

Defendant argues that the Court should dismiss the complaint in its entirety because the Commission failed to plead the circumstances constituting fraud with particularity and, alternatively, because the Spoofing Statute and Rule 180.1 are unconstitutionally vague. (Mot. Dismiss 7:18–12:5; 22:5–24:16).  Additionally, Defendant asserts that any claims arising before August 5, 2016, are time-barred under the applicable statute of limitations. (*Id.* 12:6–13:12).  Lastly, Defendant asserts that the Court should dismiss Count II of the complaint because the Commission failed to allege a market manipulation cause of action. (*Id.* 13:13–22:4).

///

### A. Pleading Fraud with Particularity

The parties do not dispute that the claims at issue here are subject to the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure. (Mot. Dismiss 8:8–9); (Resp. 13:20–16:5); *see also Commodity Futures Trading Comm'n v. Monex Credit Co.*, No. SACV-17-1868-JVS-DFMX, 2020 WL 1625808, at *5 (C.D. Cal. Feb. 12, 2020). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Brandstorm, Inc. v. Glob. Sterilization & Fumigation, Inc.*, No. 3:19-cv-00315-MMD-CLB, 2020 WL 1469687, at *2 (D. Nev. Mar. 26, 2020). That is, the plaintiff must include "the who, what, when, where, and how" of the fraud. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

According to Defendant, to plead fraud with particularity Plaintiff must include "the who, what, when, where, and how" of every individual claim—here, each of the 1,808 trades or orders alleged in the Complaint. (*See* Mot. Dismiss 8:21–9:3). Defendant's own citations, however, bely his argument. In his Reply, Defendant cites *Great American Insurance Co. v. Mowforth* as an example of a complaint dismissed on 9(b) grounds where it alleged that fraud occurred "beginning in 2017 to May 21, 2019" because plaintiff did not provide "dates, times, or place" within the broad two-year period. (Reply 4:13–16 (citing *Mowforth*, No. 20-cv-02776-JSW, 2020 WL 12216543, at *3 (N.D. Cal. Dec. 1, 2020)). But Defendant ignores the citation and parenthetical the *Mowforth* court used to support its conclusion. *Mowforth* goes on to quote a Ninth Circuit case, stating, "Rule 9(b) may not require [the plaintiff] to allege, in detail, all facts supporting each and every instance of [fraud] over a multi-year period." *Mowforth*, 2020 WL 12216543, at *3 (quoting *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001)). That is, according to case law provided by Defendant, the Commission does *not* need to include factual details supporting each of the 1,808 trades or orders alleged in the Complaint. *See id.*; *see also United States v. United Healthcare Ins. Co.*,

1   848 F.3d 1161, 1180 (9th Cir. 2016) ("The complaint also need not identify representative

2   examples of false claims to support every allegation.") (internal quotation marks omitted)).

3         Defendant also relies heavily on *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, a

4   Second Circuit decision upholding dismissal of a complaint under Rule 9(b) because plaintiffs

5   "offered no specific allegations that the defendants did anything to manipulate the market; it

6   relies, at best, on speculative inferences." (Mot. Dismiss 9:4–13 (quoting *ATSI*, 493 F.3d 87,

7   103 (2d Cir. 2007)). But the Complaint here *does* offer specific allegations that Defendant did

8   something to manipulate the market. (*See, e.g.*, Compl. at ¶¶ 1, 32, 34, 45–47, 51, 56, 58, 67,

9   72, 74–75, 85, 88, 94, 96, 102). The Complaint alleges, in detail, that Defendant placed

10  Genuine Orders on one side of the market while placing Spoof Orders on the opposite side of

11  the market to send false signals of increased supply or demand into the market and deceive or

12  trick other market participants. (*See* Compl. ¶¶ 31–32).

13        Defendant's reliance on *In re Commodity Exchange Inc., Silver Futures & Options*

14  *Trading Litig.* (*In re COMEX*) is similarly misplaced. In *In re COMEX*, the court found that

15  "even under Rule 8(a)'s more permissive standard, the Complaint fails to plead factual

16  allegations sufficient to allow the Court to draw 'the reasonable inference' that Defendants are

17  liable for the misconduct alleged." No. 11 MD 2213 RPP, 2012 WL 6700236, at *9 (S.D.N.Y.

18  Dec. 21, 2012). As the Commission states, the Complaint here alleges that Defendant "placed

19  and canceled Spoof Orders with the intent to deceive other market participants, alleges

20  circumstantial facts that support those allegations, and describes seven representative examples

21  in great detail." (Resp. 15:19–22); (*see, e.g.*, Compl. ¶¶ 1, 32, 34, 45–47, 51, 56, 58, 67, 72, 74–

22  75, 85, 88, 94, 96, 102). The Court finds that the allegations in the Complaint survive a Rule

23  9(b) analysis and DENIES Defendant's Motion to Dismiss based on failure to plead fraud with

24  particularity.

25  ///

### B.     Constitutional Vagueness

Defendant further argues that both claims should be dismissed because the Spoofing Statute and Rule 180.1 are unconstitutionally vague as applied to him. (Mot. Dismiss 22:5–24:16). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Where, as here, the law in question does not implicate First Amendment rights, courts view a vagueness challenge on an "as-applied" basis. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 n.7 (1982).

Courts reviewing a vagueness challenge apply a strong presumption that a law is valid. *United States v. Nat'l Dairy Prod. Corp.*, 372 U.S. 29, 32 (1963). This presumption is even more difficult to overcome when the challenge concerns economic regulation. "[E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow" and because those impacted "can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Ests.*, 455 U.S. at 498. The presumption of validity is further strengthened when the law challenged has "civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 489–99. "And the [Supreme] Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id.* at 499.

Courts have previously rejected arguments asserting that the Spoofing Statute and Regulation 180.1 are unconstitutionally vague. *See, e.g.*, *U.S. Commodity Futures Trading Comm'n v. Oystacher*, 203 F. Supp. 3d 934, 939–50 (N.D. Ill. 2016); *United States v. Coscia*, 100 F. Supp. 3d 653, 656–59 (N.D. Ill. 2015). Defendant nonetheless maintains that, while he "may have had notice of the Spoofing Statute and Rule 180.1, as applied to severe cases

///

involving algorithmic spoofing," Defendant "had absolutely no notice that his legitimate, manual trading could be swept within the laws proscriptions." (Reply 12:12–15).

The Spoofing Statute declares it "unlawful for any person to engage in any trading, practice, or conduct on or subject to the rules of a registered entity that . . . is, is of the character of, or is commonly known to the trade as, 'spoofing' (bidding or offering with the intent to cancel the bid or offer before execution)." 7 U.S.C. § 6c(a)(5)(C).[4] The Commission here explicitly alleges, with supporting factual allegations, that Defendant placed both bids and offers with the intent to cancel those bids or offers before execution, the very definition of spoofing under the statute. The Complaint explains the general pattern of Defendant's alleged scheme and details several examples demonstrating conduct the Commission believes falls within the purview of the Spoofing Statute. Considering the Commission's allegations as true, as the Court must, Defendant's trading behavior falls squarely within the Spoofing Statute's defined prohibition. "Moreover, the Spoofing Statute's scienter requirement mitigates any vagueness concerns." *Oystacher*, 203 F. Supp. 3d at 943.

Regulation 180.1 declares it unlawful to intentionally or recklessly "[u]se or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud;" or "[e]ngage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 180.1(A)(1), (3). Defendant relies on his earlier arguments regarding the Spoofing Statute and fails to articulate any separate reason why Regulation 180.1 is unconstitutionally vague as applied to him. (Mot. Dismiss 24:8–16). "Regardless, CFTC Regulation 180.1 is not unconstitutionally vague given its scienter requirement, clear prohibition of manipulative schemes, and relation to Section 10(b) of the Securities Exchange Act and the Security and Exchange Commission's ('SEC')

---

[4] Noticeably absent from the statutory language is any differentiation between pre-programmed systems and manual trading.

related Rule 10b-5." *Oystacher*, 203 F. Supp. 3d at 949 (noting that Regulation 180.1 is "nearly identical" to Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5, "which have both passed constitutional muster"). Accordingly, the Court DENIES Defendant's Motion to Dismiss based on the void for vagueness doctrine.

### C. Statute of Limitations

Defendant argues that any claims accruing before August 5, 2016, are time-barred. (Mot. Dismiss 12:6–13:12). A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show that relief is barred by the applicable statute of limitations. *See Fed. Election Comm'n v. Williams*, 104 F.3d 237, 241 (9th Cir. 1996). Here, the applicable statute of limitations is found in 28 U.S.C. § 2462, which governs actions for the "enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise." Pursuant to 28 U.S.C. § 2462, a regulatory enforcement action like this one must be commenced within five years after a claim accrues.[5]

The Commission filed the Complaint on August 5, 2022. (*See generally* Compl.). Due to a Statute of Limitations Tolling Agreement, (Ex. 2 to Mot. Dismiss), tolling the applicable statute of limitations to any action against Defendant from July 15, 2020, through July 15, 2021, the relevant date for statute of limitations purposes is August 5, 2016. The Relevant Period began before August 5, 2016. Nonetheless, the Commission argues that Counts I and II are "scheme" offenses that toll the running of Section 2462.

A recent decision from the Northern District of Illinois considered a "scheme" offense argument in another spoofing case with facts quite similar to the facts here. *See Commodity Futures Trading Comm'n v. Skudder*, No. 22 CV 1925, 2022 WL 17752392 (N.D. Ill. Dec. 19,

---

[5] The Commission argues that the Complaint is not subject to Section 2462's five-year limitations period because the Complaint seeks injunctive relief, restitution, and disgorgement. (Resp. 21:11–22:2). But the Complaint also seeks to suspend Defendant from trading. (Compl. 52:21–53:17). Where, as here, an enforcement action seeks to impose a punishment, § 2462's five-year statute of limitations governs. *See Johnson v. S.E.C.*, 87 F.3d 484, 492 (D.C. Cir. 1996).

2022).  In *Skudder*, the Commission alleged that the defendant "orchestrated two schemes designed to manipulate and deceive the soybean futures market" by "allegedly engaging in spoofing: placing orders that he intended to cancel while simultaneously placing orders on the opposite side of the market that he hoped to execute." *Id.* at *1.  The court found the complaint timely because, even though some conduct alleged in the complaint may have occurred outside the limitations period, the defendant "executed at least some of the trades at issue after" the relevant date. *Id.* at *5; *see also United States v. Smith*, 555 F. Supp. 3d 563, 588 (N.D. Ill. 2021) ("So if one instance of a spoofing or price-manipulation happens within the statute of limitations, then the defendant may be held 'culpable for the entire scheme.'" (quoting *United States v. Longfellow*, 43 F.3d 318, 325 (7th Cir. 1994)).

The *Skudder* court "decline[d] to decide how the scheme-offense doctrine should apply to requests for civil monetary penalties." *Id.* at *5.  This Court follows suit.  "With the benefit of a better-developed record, at summary judgment or trial the parties may renew the argument as to the scheme-offense doctrine and its application to the CFTC's claims for civil penalties under 7 U.S.C. § 13a-1(d)(1)." *Id.*  "At this point, however, when the complaint does not identify specific claims by date, the statute of limitations isn't a reason to dismiss undated claims."[6] *Id.*  The Court therefore DENIES Defendant's Motion to Dismiss on statute of limitations grounds.

### D. Market Manipulation Cause of Action

Defendant further argues that the Commission failed to adequately allege a market manipulation cause of action, Count II of the Complaint, for violations of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(A). (Mot. Dismiss 13:13–22:4).  Under the CEA and accompanying regulations, it is unlawful to use "any manipulative or deceptive device or contrivance," 7

---

[6] Like the examples of specific alleged spoofing events in *Skudder*, the examples provided in the Complaint here are timely because they all occurred after August 5, 2016. (*See generally* Compl.).

U.S.C. § 9(1), and "to intentionally or recklessly: (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud . . . [or] (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 180.1(a)(1), (3). Thus, the Commission must allege three elements to state a claim for a market manipulation cause of action: (1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) materiality; and (3) scienter. *U.S. Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1325 (11th Cir. 2018). The Court considers each element in turn.

### 1.   Misrepresentation

"[T]he 'essential element' of a market manipulation claim is the injection of 'inaccurate information' into the market." *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 204 (3d Cir. 2001) (quoting *In re Olympia Brewing Co. Sec. Litig.*, 613 F. Supp. 1286, 1292 (N.D. Ill. 1985)).[7] "Manipulation" is a term of art generally referring to practices "that are intended to mislead investors by artificially affecting market activity." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977). When evaluating market manipulation claims, "[c]ourts must differentiate between 'legitimate trading strategies intended to anticipate and respond to prevailing market forces and those designed to manipulate prices and deceive purchasers and sellers.'" *Kessev Tov, LLC v. Doe(s)*, No. 20-cv-04947, 2022 WL 2356626, at *7 (N.D. Ill. June 30, 2022) (quoting *GFL Advantage Fund*, 272 F.3d at 205).

Here, the Complaint adequately alleges that Defendant made a misrepresentation designed to inject inaccurate information into the market. According to the Complaint, Defendant allegedly engaged in a Scheme in which he would place a small Genuine Order on one side of the market and a large Spoof Order he intended to cancel on the other side of the

---

[7] Courts often look to Section 10(b) of the Securities Exchange Act when interpreting Section 9(1) and Rule 180.1. *See C.F.T.C. v. Monex Credit Co.*, 931 F.3d 966, 976 (9th Cir. 2019). The Court therefore cites relevant Section 10(b) cases such as *GFL Advantange Fund* where appropriate.

market. (Compl. ¶ 31). Defendant would then cancel his Spoof Order, typically after his Genuine Order was filled. (*Id.*). As the examples provided in the Complaint demonstrate, Defendant's trading activity appears to have been designed to deceive other traders about supply and demand. (*Id.* ¶¶ 34, 36, 54, 60, 66–67, 77, 84–85, 96–97, 102). Defendant allegedly intended his Spoof Orders to place upward or downward pressure on market prices, purportedly to get better prices on his Genuine Orders. (*Id.*).

Defendant argues that his "open market, bona fide trades—even if canceled quickly—cannot sustain a market manipulation claim absent allegations of inaccurate pricing information to the market." (Mot. Dismiss 14:16–18). Defendant analogizes his trading activity to the trading activity at issue in *Kessov Tov*. (*Id.* 14:18–15:14). In *Kessov Tov*, the plaintiffs alleged that defendants injected inaccurate information into the market because defendants entered orders they had no intention of executing and indeed canceled before they could have been executed. 2022 WL 2356626, at *8. The court found that the "only 'pattern' apparent from the face of the complaints is that of rapidly placed and subsequently cancelled orders." *Id.* *9.

The Commission here alleges far more than the rapid placement and subsequent cancellation of orders.[8] As the Commission notes, the Complaint alleges that (1) Defendant placed large Spoof Orders opposite smaller Genuine Orders, (Compl. ¶¶ 31, 33); (2) his Spoof Orders were intended to and did benefit his Genuine Orders, (*id.* ¶¶ 34, 36, 47, 54, 60, 67, 78, 85, 96–97, 102), (3) Defendant layered his Spoof Orders and took other actions to ensure that they would not be executed, (*id.* ¶¶ 39–44, 51, 53, 56, 69–60, 65–66, 71–72, 74, 76–77, 83–84, 89, 93, 95, 101); (4) a clear disparity in time to cancelation between Spoof Orders and Genuine Orders exists, (*id.* ¶ 38); a disparity between the "hit rate" for Spoof Orders and Genuine

///

---

[8] Unlike the Complaint here, the complaint in *Kessev Tov* "lack[ed] the traditional hallmarks of spoofing." *Kessev Tov*, 2022 WL 2356626, at *8.

Orders exists, (*id.* ¶ 42–43), and (5) Defendant canceled Spoof Orders that received a partial fill or were at greater risk of being filled first, (*id.* ¶ 41).

The Commission's Complaint is similarly distinguishable from the complaint at issue in *CP Stone Fort Holdings, LLC v. John*, which lacked "any allegation of how many orders were executed, how long the ultimately cancelled orders had remained resting and available for execution prior to cancellation, or whether the platform rules required the orders to be exposed further." No. 16 C 4991, 2016 WL 5934096, at *6 (N.D. Ill. Oct. 11, 2016).  The Complaint here alleges that the median cancellation time for all Spoof Orders was 11.8 seconds, in contrast to the median cancellation time of 55.4 seconds for his Genuine Orders. (Compl. ¶ 38). The Complaint further alleges that Defendant acted quickly to cancel his Spoof Orders after receiving a fill on his Genuine Orders: "In Spoof Events where Shak received a complete fill on his Genuine Order, the median time between the fill of his Genuine Order and the first cancelation of a Spoof Order was 2.3 seconds." (*Id.* ¶ 39).  Thus, the Complaint here includes allegations the *CP Stone* court found lacking in that case.

Defendant is correct that, as the courts found in *CP Stone I* and *Kessev Tov*, "there is nothing improper or illegitimate about placing passive orders in the order book and then reversing position." (Mot. Dismiss 16:12–14).  But that is not what the Commission alleges here, and there *is* something improper or illegitimate about spoofing.[9]  Through the detailed allegations concerning Defendant's Spoof Orders, the Commission sufficiently alleged that Defendant made a misrepresentation designed to inject inaccurate information into the market.[10]

---

[9] Defendant does not argue that the Court should dismiss Count I for failure to state a claim for spoofing.
[10] Defendant further argues that the Complaint is deficient because it does not allege Defendant injected inaccurate information into the market to disrupt the natural interplay of supply and demand, asserting that "[n]one of the 107 paragraphs in the Complaint describes the effect that Mr. Shak's alleged spoofing had on the price for gold and silver futures on Globex." (Mot. Dismiss 17:3–15).  The Court refers Defendant to paragraphs 88 and 96 of the Complaint, which allege facts suggesting that Defendant's trading activity sent false signals of supply.

### 2. Materiality

The Court next considers whether Defendant's misrepresentation was material. "To satisfy the materiality requirement, a plaintiff must allege a statement or omission that a reasonable investor would have considered significant in making investment decisions." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060–61 (N.D. Cal. 2012) (citing *Basic v. Levinson*, 485 U.S. 224, 231–32 (1988)). "Similarly, an omission is material if there is a substantial likelihood that the 'disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of the information made available.'" *Id.* at 1061 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, (1976)).

Here, the Commission alleges that signals of supply and demand are important to market participants and explains how the injection of false signals of supply and demand impacts their decision making. (Compl. ¶¶ 26–29). The Complaint also explains how Defendant's spoofing was intended to impact market participants' decisions. (*Id.* ¶¶ 34–36, 46–47). And in the seven detailed examples provided in the Complaint, the Commission alleges that Defendant used Spoof Orders to place upward or downward pressure on the price. (*Id.* ¶¶ 54, 60, 66, 67, 71, 77, 84, 85, 96, 97, 102). The Complaint further alleges that such price pressure is a factor that market participants consider, (*id.* ¶ 27), and that Defendant applied that pressure with the knowledge that it "would trick other market participants," (*id.* at ¶ 34).

Defendant nonetheless argues that "[a]ll these vague allegations suggest is that, at best, market participants *may have* viewed Mr. Shak's orders and that the orders *may have* influenced their investment decision." (Mot. Dismiss 18:8–9). But the Commission is not required to prove or even allege reliance. *See SEC v. Murphy*, 50 F.4th 832, 847 (9th Cir. 2022) (noting that "the SEC, unlike private parties, need not prove reliance"); *Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1325 (11th Cir. 2018) (same in CFTC

case). Moreover, the examples provided in the Complaint allege facts that plausibly suggest market participants *did* view Defendant's orders and that the orders *did* influence their investment decision. (*See, e.g.*, ¶ 94 (alleging that bid-ask spread moved up "perhaps in response to the false signals of demand" Defendant's Spoof Orders conveyed)). The Court finds that the Commission adequately alleged materiality.

### 3. Scienter

Lastly, the Court turns to the issue of scienter. Defendant argues that to meet the heightened pleading requirement in Rule 9(b), "the complaint must contain allegations of specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." (Mot. Dismiss 19:13–16) (quoting *DeMarco v. DepoTech Corp.*, 32 F. App'x 260, 262 (9th Cir. 2002)). But Defendant relies on cases governed by the Private Securities Litigation Reform Act ("PSLRA"), which requires private litigants to plead facts leading to a "strong inference" of scienter. *DeMarco*, 32 F. App'x at 262. The Commission is not subject to this requirement. *Commodity Futures Trading Comm'n v. Caniff*, No. 19-CV-2935, 2020 WL 956302, at *7 (N.D. Ill. Feb. 27, 2020) ("The CFTC, like the Securities Exchange Commission ('SEC'), is a federal agency charged with protecting the investing public and therefore is not subject to the heightened 'state of mind' pleading standard for private plaintiffs who are subject to the [PLSRA]").

Rather, Ninth Circuit precedent holds that "Rule 9(b) explicitly allows intent to be alleged generally." *S.E.C. v. Berry*, 580 F. Supp. 2d 911, 921 (N.D. Cal. 2008); *see also* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). The Commission must simply "provide a sufficient factual context to render a finding of scienter plausible." *S.E.C. v. Fraser*, No. CV-09-00443-PHX-GMSC, 2009 WL 2450508, at *12 (D. Ariz. Aug. 11, 2009). "In the absence of direct evidence, fraudulent

intent can be alleged with circumstantial facts about the nature of the alleged scheme." *Skudder*, 2022 WL 17752392, at *6.

Here, the Commission alleges circumstantial facts providing sufficient factual context to render a finding of scienter plausible. The Complaint alleges a myriad of facts that, taken together and accepted as true, demonstrate Defendant's intent or, at minimum, recklessness. The Complaint details the ratio of Spoof Orders to Genuine Orders, (Compl. ¶ 33), the size and duration of his Spoof Orders as compared to his Genuine Orders, (*id.* ¶ 38); his practice of quickly canceling Spoof Orders immediately after filling his Genuine Orders, (*id.* ¶ 39); his placement and cancelation of Genuine Orders in sequences intended to minimize the possibility that the Spoof Orders would get filled, (*id.* ¶ 40); his cancelation of Spoof Orders when they received a partial fill or the market moved towards them, (*id.* ¶ 41); and the disparate hit rates for his Spoof Orders and Genuine Orders, (*id.* ¶¶ 42–43). Moreover, the seven examples illustrate the Commission's theory of how Defendant's trading behavior reflected his intent. (*Id.* ¶¶ 54–54; 59–60, 65–67, 72, 76–78, 83–85, 89, 95–96, 101–102). Accordingly, the Court DENIES Defendant's Motion to Dismiss as to the second cause of action. *See, e.g.*, *Skudder*, 2022 WL 17752392, at *9 (finding that CFTC "has done enough to suggest the requisite intent" when "the complaint describes the features, aims, and results" of alleged schemes).

///
///
///
///
///
///
///
///

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that the Motion to Dismiss, (ECF No. 5), is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Leave to File Document, (ECF No. 27), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion for Leave to File Document, (ECF No. 43), is **DENIED as moot**.

Dated this  5  day of September, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT