JAMES H. HOLL, III, CA BAR NO. 177885
BRIAN A. HUNT, NY BAR NO. 5260534
COMMODITY FUTURES TRADING COMMISSION
1155 21st Street, NW
Washington, DC 20581
Telephone (202) 418-5311 (Holl)
Telephone (202) 418-5095 (Hunt)
jholl@cftc.gov
bhunt@cftc.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| COMMODITY FUTURES<br>    TRADING COMMISSION, | Case No. 2:22-cv-01258-GMN-NJK |
| Plaintiff, | **JOINT MOTION FOR ENTRY OF**<br>**CONSENT ORDER** |
| vs. |  |
| DANIEL SHAK, an individual, |  |
| Defendant. |  |

Plaintiff Commodity Futures Trading Commission (the "Commission") and Defendant Daniel Shak ("Shak," collectively with the Commission, the "Parties") seek entry of the Parties' agreed proposed Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Daniel Shak ("Consent Order").  In support of this motion, the parties state:

1.      On August 5, 2022, the Commission filed a Complaint against Shak.  On August 18, 2022, Shak agreed to waive service.

2.      The Parties negotiated and agreed upon the terms of a settlement as reflected in the proposed Consent Order, attached hereto as **Exhibit A**.

1

3.      If entered by the Court, the Consent Order would resolve this litigation and the Commission's claims against Shak in their entirety, and eliminate the need to litigate the merits of Shak's liability or the remedies to be imposed.

4.      The proposed Consent Order is fair, reasonable, in the public interest, and settlement of these claims will further the interests of justice and judicial economy.

5.      The Parties jointly move for the relief sought in this motion.


WHEREFORE, the Commission and Shak respectfully request that the Court enter the proposed Consent Order.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

KAEMPFER CROWELL

COMMODITY FUTURES
   TRADING COMMISSION

*/s Robert McCoy*
_____

Robert McCoy, No. 9121
Sihomara L. Graves, No. 13239
Briana Martinez, No. 14919
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135

HOGAN LOVELLS LLP
Melvin A. Brosterman (*pro hac vice*)
Elizabeth Milburn (*pro hac vice*)
390 Madison Avenue
New York, New York 10017
*Counsel for Defendant*

Dated April 8, 2024_____

James H. Holl, III (*pro hac vice*)
Brian A. Hunt, (*pro hac vice*)
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581
*Counsel for Plaintiff*

3

**<u>CERTIFICATE OF SERVICE</u>**

I, the undersigned, hereby certify that on this 8th day of April, 2024, I filed the

foregoing document using the CM/ECF system, which automatically sends notice and a copy

of the filing to all counsel of record.

> */s Brian A. Hunt*
> Brian A. Hunt

EX. A TO
JOINT MOTION FOR
ENTRY OF CONSENT ORDER

JAMES H. HOLL, III, CA BAR NO. 177885
BRIAN A. HUNT, NY BAR NO. 5260534
COMMODITY FUTURES TRADING COMMISSION
1155 21st Street, NW
Washington, DC 20581
Telephone (202) 418-5311 (Holl)
Telephone (202) 418-5095 (Hunt)
jholl@cftc.gov
bhunt@cftc.gov

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**SOUTHERN DIVISION**

COMMODITY FUTURES
   TRADING COMMISSION,

      Plaintiff,

   vs.

DANIEL SHAK, an individual,

      Defendant.

Case No. 2:22-cv-01258-GMN-NJK

**CONSENT ORDER FOR PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER EQUITABLE RELIEF AGAINST DEFENDANT DANIEL SHAK**

## I. INTRODUCTION

On August 5, 2022, Plaintiff Commodity Futures Trading Commission ("Commission") filed a Complaint (ECF No. 1) against Defendant Daniel Shak ("Shak") seeking injunctive and other equitable relief, as well as the imposition of civil penalties, for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26, and the Commission's Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2023).

## II. CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against Shak without a trial on the merits or any further judicial proceedings, Shak:

    1.   Consents to the entry of this Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief Against Defendant Daniel Shak ("Consent Order");

    2.   Affirms that he has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the Commission or any member, officer, agent, or representative thereof, or by any other person, to induce consent

1   to this Consent Order;

2   3.   Acknowledges service of the summons and Complaint;

3   4.   Admits the jurisdiction of this Court over him and the subject matter of this action

4   pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1;

5   5.   Admits the jurisdiction of the Commission over the conduct and transactions at

6   issue in this action pursuant to the Act;

7   6.   Admits that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

8   7.   Waives:

9   (a) Any and all claims that he may possess under the Equal Access to
    Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and/or the rules
10  promulgated by the Commission in conformity therewith, Part 148 of
    the Regulations, 17 C.F.R. pt. 148 (2023), relating to, or arising from,
11  this action;

12  (b) Any and all claims that he may possess under the Small Business
    Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit.
13  II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28
    U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.),
14  relating to, or arising from, this action;

15  (c) Any claim of Double Jeopardy based upon the institution of this action
    or the entry in this action of any order imposing a civil monetary
16  penalty or any other relief, including this Consent Order; and

17  (d) Any and all rights of appeal from this action;

18  8.   Acknowledges that the Commission is the prevailing party in this action for

19  purposes of the waiver of any and all rights under the Equal Access to Justice Act and the Small

20  Business Regulatory Enforcement Fairness Act of 1996, specified in subparts (a) and (b) of

21  paragraph 7.

22  9.   Consents to the continued jurisdiction of this Court over him for the purpose of

23  implementing and enforcing the terms and conditions of this Consent Order and for any other

24  purpose relevant to this action, even if Shak now or in the future resides outside the jurisdiction of

25  this Court;

26

27

28

2

10. Agrees that he will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waives any objection based thereon;

11. Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect his:  (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party.  Shak shall comply with this agreement, and shall undertake all steps necessary to ensure that all of his agents and/or employees under his authority or control understand and comply with this agreement;

12. Consents to the entry of this Consent Order without admitting or denying the allegations of the Complaint or any findings or conclusions in this Consent Order, except as to jurisdiction and venue, which he admits in Paragraphs 4 through 6 above;

13. Consents to the use of the findings and conclusions in this Consent Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agrees that the findings and conclusions in this Consent Order shall be taken as true and correct and be given preclusive effect therein, without further proof;

14. Does not consent, however, to the use of this Consent Order, or the findings and conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party, other than:  a statutory disqualification proceeding; a proceeding in bankruptcy, or receivership; or a proceeding to enforce the terms of this Order. Shak does not consent to the use of this Consent Order, including the findings of fact or conclusions of law herein, by any other party in any other proceeding;

15. Agrees to provide immediate notice to this Court and the Commission by certified mail, in the manner required by paragraph 60 of Part VI of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him, whether inside or outside the United States; and

16. Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against Shak in any other proceeding.

III. **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

17. The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay. The Court therefore directs the entry of the following Findings of Fact, Conclusions of Law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as set forth herein.

**THE PARTIES AGREE AND THE COURT HEREBY FINDS:**

    A. **Findings of Fact**

        1. **The Parties to this Consent Order**

18. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and Regulations.

19. Defendant **Daniel Lawrence Shak** is an individual who maintains a residence in Las Vegas, Nevada. From at least April 1993 to August 2016, Shak was registered with the Commission as a floor broker. Shak was registered with the Commission as a floor trader from August 2016 to December 2018.

        2. **Fundamentals of Gold and Silver Futures Markets**

20. A futures contract is an agreement to buy or sell a commodity for delivery or cash settlement in the future at a specified price. A futures contract traded on an exchange has standard, non-negotiable contract specifications, such as the quality, quantity, and physical delivery time and location for the given product.

1     21.     The gold futures contract ("Gold contract") and silver futures contract ("Silver

2 contract") are traded on the Commodity Exchange, Inc. ("COMEX"). COMEX is a designated

3 contract market under the Act. The CME Group ("CME") is a holding company that owns

4 COMEX and operates an electronic trading platform known as Globex.

5     22.     Globex is an open-access marketplace that allows traders to view the book of

6 visible orders and prices for futures contracts, and enter their own orders to buy or sell futures

7 contracts. An "order," in the context of electronic exchange trading, is a request submitted to the

8 exchange to buy (that is, "bid") or sell (that is, "offer" or "ask") a certain number of a specified

9 futures contract. An order may be for one or more lots. When a bid or offer is submitted through

10 Globex, it becomes part of the list of orders reflected in the "order book" for a particular futures

11 contract. Traders often consider information in the order book when making trading decisions.

12     23.     An "aggressive" order is an order that crosses, or aggresses, the bid-ask spread in

13 order to execute a trade. A "passive" or "resting" order, by contrast, does not cross the bid-ask

14 spread. An iceberg order is an order in which the size of the order is not fully visible to other

15 market participants.

16     **3.**     **Shak's Manipulative and Deceptive Scheme**

17     **a)**     **Shak's Trading and Overview of Spoofing Scheme**

18     24.     From February 26, 2015 through March 1, 2018 (the "Relevant Period"), Shak

19 held accounts at a futures commission merchant whose headquarters is in New York, New York

20 (the "Futures Trading Accounts"). Shak entered orders and executed trades in the Futures Trading

21 Accounts on his own behalf. Shak was directly or indirectly responsible for all of the orders

22 placed in the Futures Trading Accounts.

23     25.     During the Relevant Period, Shak engaged in a manipulative and deceptive scheme

24 (the "Scheme") that consisted of spoofing the gold and silver futures markets on CME's Globex

25 electronic trading platform. Shak's Scheme followed a general pattern: (i) placing a small order

26 (between one and twenty-five lots) for Gold or Silver futures that he intended to execute

27 ("Genuine Orders"); (ii) before or after entering a Genuine Order, placing one or more larger

28

1    resting orders on the opposite side of the market, which he placed with the intent to cancel ("Spoof

2    Orders"); and (iii) canceling his Spoof Orders, typically after his Genuine Order was filled. Shak

3    engaged in more than 700 distinct Spoof Events—more than 400 Spoof Events in Gold futures,

4    and more than 300 distinct Spoof Events in Silver futures. These 700-plus Spoof Events

5    encompassed 1,808 individual Spoof Orders.

6        26.       When he engaged in the Scheme, Shak knew or was reckless to the fact that his

7    Spoof Orders would send false signals of increased supply or demand (i.e., increased selling or

8    buying interest) into the market and would deceive or trick other market participants.

9                           (a)     **Shak's Spoof Orders Deceived Other Market Participants**

10       27.       Shak's Genuine Orders and Spoof Orders were active simultaneously on opposite

11   sides of the market, but the Spoof Orders encompassed a far greater total volume than the Genuine

12   Orders. In total, the median ratio of visible Spoof Order lots to visible Genuine Order lots during

13   Spoof Events was approximately 50-to-1.

14       28.       Shak's Scheme was designed to benefit financially from market participants'

15   reaction to his Spoof Orders. By entering orders that he intended to cancel, Shak deceived other

16   traders about supply and demand, misleading market participants about the likely direction of the

17   commodity's price.

18       29.       The following is a simplified explanation of how his Scheme was intended to work

19   and often did work, using a hypothetical example of Spoof Orders on the buy side. Shak placed

20   Spoof Orders to buy that resulted in an increase in demand in the order book (i.e., the Spoof

21
     Orders created or added to an order book imbalance in which orders to buy outweigh orders to sell,
22

23   or otherwise altered the status quo by increasing demand). This increase was visible to other

24   market participants and led them to conclude that the price was likely to rise. This conclusion, in

25   turn, impacted market participants' decisions, including prompting some to attempt to purchase

26   contracts before the predicted rise in price happened. In such a case, these participants placed

27

28
                                                        6

orders to buy which enabled orders on the opposite side of the Spoof Orders—including Shak's Genuine Orders—to sell sooner, at a better price, or in larger quantities than they otherwise would.

### (b) Shak Placed Spoof Orders With the Intent to Cancel Them Before They Were Executed and Took Steps to Ensure That Happened

30.   At the time Shak placed his Spoof Orders, he intended to cancel them before execution. Shak designed the Scheme to ensure his Spoof Orders were canceled prior to execution while his Genuine Orders were executed at a high rate, and he took steps to protect his Spoof Orders from execution.

### (c) Shak Intended to Send False Information About Supply and Demand, or at Least Was Reckless to the Possibility That His Spoof Orders Would Send Such False Information

31.   By engaging in the Scheme as described herein, Shak entered Spoof Orders either to intentionally send a false signal to the market that he actually wanted to buy or sell the number of contracts specified in those orders, or while recklessly disregarding the fact that entering these orders would send such a false signal to market participants—a signal that injected false information about supply and demand into the market.

32.   Shak knew or recklessly disregarded that the false information about supply and demand would trick other market participants into trading against his Genuine Orders on the opposite side of the market—allowing those Genuine Orders to fill sooner, at a better price, or in larger quantities than they otherwise would.

### (d) Examples of Shak's Spoofing Scheme

33.   A few examples of Shak's spoofing activity are described below. All of these examples share a common theme that is generally consistent with Shak's spoofing activity throughout the Relevant Period: Shak placed a small Genuine Order (or Orders) on one side of the market, quickly preceded or followed by one or more Spoof Orders on the opposite side of the market. These Spoof Orders created or exacerbated a market imbalance (and concomitant price pressure) and were cancelled within close proximity of the Genuine Order being filled.

7

1

*Example 1: March 24, 2017*

2      34.      At 8:30:17.046 AM on March 24, 2017, Shak modified a preexisting five-lot

3  Genuine Order to sell the April 2017 Gold contract, changing it from a price of $1,245.30 to

4  $1,245.00.

5      35.      At 8:30:20.375, Shak placed a 50-lot Spoof Order to buy at $1,244.50. Shak

6  canceled that order at 8:30:23.191, a few seconds after the best bid momentarily dropped to

7  $1,244.50, putting the Spoof Order at greater risk of being hit.

8      36.      Starting at 8:30:26.155, Shak began placing a series of Spoof Orders to buy,

9  starting at $1,244.10 and moving closer to the best bid. Between 8:30:26.155 and 8:30:32.855,

10  Shak placed four Spoof Orders to buy a total of 250 lots, in the following sequence:

11              • 100-lot order at $1,244.10
              • 50-lot order at $1,244.20
12              • 50-lot order at $1,244.30
13              • 50-lot order at $1,244.40.

14      37.      At 8:30:36.372, after he finished placing the Spoof Orders, Shak modified his

15  Genuine Order down to a price of $1,244.70, which was at that time the best offer. After less than

16  100 milliseconds, another trader crossed the bid-ask spread and filled Shak's Genuine Order at

17  8:30:36.432.

18      38.      Seconds after the Genuine Order was filled, Shak began canceling his Spoof

19  Orders. He started by canceling his Spoof Order at $1,244.40 at 8:30:39.924, and cancelled the

20  last Spoof Order at 8:30:42.819. Shak canceled all four remaining Spoof Orders in the span of a

21  little less than three seconds, meaning that on average it took approximately 750 milliseconds to

22  cancel each Spoof Order. Shak canceled the Spoof Orders in order by price, starting with the

23  order closest to the bid-ask spread and at greatest risk of being hit, and ending with the order

24  furthest from the bid-ask spread and at the least risk of being hit.

25      39.      In summary, while waiting for a fill on a five-lot Genuine Order to sell, Shak

26  placed upward pressure on the price by placing five Spoof Orders to buy a total of 300 lots, which

27  he intended to cancel, and which he did cancel without any lots being filled. Shak took additional

28  steps to ensure that his Spoof Orders would not be filled, including leaving the Spoof Orders

8

closest to the best bid on the order book for the shortest period of time, and quickly canceling one of his Spoof Orders after the best bid moved to the same price level, putting that Spoof Order at increased risk of being hit.  At 8:30:26.155, when Shak began placing the series of Spoof Orders to buy, the best price he could have filled his Genuine Order at was $1,244.50.  As he began placing Spoof Orders to buy, the market moved such that his Genuine Order could ultimately be fully filled at $1,244.70.  In other words, Shak's spoofing allowed him to fill his Genuine Order at a better price than he otherwise might have obtained if he had not placed the series of Spoof Orders.

### *Example 2:  September 18, 2017*

40.     At 6:30:32.856 AM on September 18, 2017, Shak modified two one-lot Genuine Orders to sell the December 2017 Silver contract, changing them from a price of $17.585 to $17.580.  Between 6:30:46.389 and 6:31:19.636, Shak placed eight Spoof Orders to buy a total of 340 lots, in the following sequence:

- 50-lot order at $17.560
- 50-lot order at $17.555
- 50-lot order at $17.550
- 50-lot order at $17.560
- 50-lot order at $17.550
- 50-lot order at $17.555
- 20-lot order at $17.565
- 20-lot order at $17.565.

41.     In total, Shak placed two 50-lot Spoof Orders at each of $17.550, $17.555, and $17.560; and two 20-lot Spoof Orders at $17.565.

42.     While he was placing the Spoof orders, at 6:31:05.446, Shak modified his Genuine Orders to a price of $17.575, which was at that time the best offer.  At 6:31:30.746, Shak modified the Genuine Orders again, moving them to a price of $17.580.  After allowing the Genuine Orders to rest at that price for approximately 4.5 seconds, Shak modified the Genuine Orders again to a price of $17.570 at 6:31:35.275.  Because the best bid at that point in time was $17.570, Shak's

9

1    Genuine Orders became aggressive orders that crossed the bid-ask spread and filled immediately
2    at 6:31:35.275.

3        43.    Less than 1.2 seconds after the Genuine Orders was filled, Shak began canceling
4    his Spoof Orders. He started by canceling his Spoof Orders at $17.565 at 6:31:36.432, and
5    cancelled the last Spoof Order at 6:31:39.576. Shak canceled all eight Spoof Orders in the span of
6    a little more than three seconds, meaning that on average it took approximately 400 milliseconds
7    to cancel each Spoof Order. Shak canceled the Spoof Orders in order by price, starting with the
8    orders closest to the bid-ask spread and thus the order and at greatest risk of being hit, and ending
9    with the order furthest from the bid-ask spread and at the least risk of being hit.

10       44.    In summary, while waiting for a fill on two one-lot Genuine Orders to sell, Shak
11   placed upward pressure on the price by placing eight Spoof Orders to buy a total of 340 lots,
12   which he intended to cancel, and which he did cancel without any lots being filled.

13   **B.    Conclusions of Law**

14                    **1.    Jurisdiction and Venue**

15       45.    This Court possesses jurisdiction over this action under 28 U.S.C. § 1331
16   (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (providing that district courts have
17   original jurisdiction over civil actions commenced by the United States or by any agency
18   expressly authorized to sue by Act of Congress). Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a),
19   provides that the Commission may bring actions for injunctive relief or to enforce compliance
20   with the Act or any rule, regulation, or order thereunder in the proper district court of the United
21   States whenever it shall appear to the Commission that any person has engaged, is engaging, or is
22   about to engage in any act or practice constituting a violation of any provision of the Act or any
23   rule, regulation, or order thereunder.

24       46.    Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because Shak
25   maintains a residence in the District of Nevada and thus can be found here, and because Shak
26   transacted business in this district by trading commodity futures from his residence in this
27   District.

28

### 2.   Spoofing

47.     Section 4c(a)(5)(C) of the Act, 7 U.S.C. § 6c(a)(5)(C), provides that "[i]t shall be unlawful for any person to engage in any trading, practice, or conduct on or subject to the rules of a registered entity that . . . is, is of the character of, or is commonly known to the trade as, 'spoofing' (bidding or offering with the intent to cancel the bid or offer before execution)."

48.     By reason of the conduct described in paragraphs 18 through 44 above, Shak engaged in trading, practices, or conduct on or subject to the rules of a registered entity that is, is of the character of, or is commonly known to the trade as, "spoofing" (bidding or offering with the intent to cancel the bid or offer before execution).

49.     In placing each Spoof Order, Shak acted with the intent to cancel the bid or offer before execution in violation of 7 U.S.C. § 6c(a)(5)(C).

50.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that Shak will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

### 3.   Use of a Manipulative and Deceptive Device, Scheme, or Artifice

51.     Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), provides that "[i]t shall be unlawful for any person, directly or indirectly, to use or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate."

52.     Regulation 180.1(a), 17 C.F.R. § 180.1(a) (2023), provides that "[i]t shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: (1) [u]se or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; . . . [or] (3) [e]ngage, or attempt

11

1  to engage, in any act, practice, or course of business, which operates or would operate as a fraud

2  or deceit upon any person."

3       53.     By reason of the conduct described in paragraphs 18 through 44 above, Shak, in

4  connection with a contract for future delivery on a registered entity, intentionally or recklessly:

5  (1) used or employed, or attempted to use or employ, manipulative devices, schemes, or artifices

6  to defraud; or (2) engaged, or attempted to engage, in acts, practices, or courses of business,

7  which operated or would have operated as a fraud or deceit upon market participants in violation

8  of 7 U.S.C. § 9(1), and Regulation 180.1(a)(1) and (3).

9       54.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that

10  Shak will continue to engage in the acts and practices alleged in the Complaint and in similar acts

11  and practices in violation of the Act and Regulations.

12  **IV.**    **PERMANENT INJUNCTION**

13      **IT IS HEREBY ORDERED THAT:**

14       55.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c

15  of the Act, 7 U.S.C. § 13a-1, Shak is permanently restrained, enjoined and prohibited from

16  directly or indirectly:

17         a.  engaging in any trading, practice, or conduct on or subject to the rules of a

18             registered entity that is, is of the character of, or is commonly known to the trade

19             as, "spoofing" (bidding or offering with the intent to cancel the bid or offer before

20             execution) in violation of Section 4c(a)(5)(C) of the Act, 7 U.S.C. § 6c(a)(5)(C);

21             and

22         b.  intentionally or recklessly:  (1) using or employing, or attempting to use or

23             employ, manipulative devices, schemes, or artifices to defraud; or (2) engaging, or

24             attempting to engage, in acts, practices, or courses of business, which operated or

25             would have operated as a fraud or deceit upon market participants, in violation of

26             Section 6(c)(1) of the Act, 7 U.S.C. § 9(1), and Regulation 180.1(a)(1)–(3),

27             17 C.F.R. § 180.1(a)(1)–(3) (2023).

28

56.     Shak is also permanently restrained, enjoined and prohibited from directly or indirectly:

    a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40));

    b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2023)), for his own personal account or for any account in which he has a direct or indirect interest;

    c. Having any commodity interests traded on his behalf;

    d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

    e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

    f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2023); or

    g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2023)), agent, or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act,7 U.S.C. § 1a(38)), registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9).

## V.     CIVIL MONETARY PENALTY

### IT IS HEREBY FURTHER ORDERED THAT:

57.     Shak shall pay a civil monetary penalty in the amount of seven hundred fifty thousand dollars ($750,000) ("CMP Obligation"), within ten days of the date of entry of this Consent Order.  If the CMP Obligation is not paid in full within ten days of the date of entry of

1  this Consent Order, then post-judgment interest shall accrue on the unpaid portion of the CMP

2  Obligation beginning on the date of entry of this Consent Order and shall be determined by using

3  the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C.

4  § 1961.

5         58.      Shak shall pay his CMP Obligation and any post-judgment interest by electronic

6  funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money

7  order.  If payment is to be made other than by electronic funds transfer, then the payment shall be

8  made payable to the Commodity Futures Trading Commission and sent to the address below:

9             MMAC/ESC/AMK326
              Commodity Futures Trading Commission
10            6500 S. MacArthur Blvd.
              HQ Room 266
11            Oklahoma City, OK 73169
              9-amz-ar-cftc@faa.gov
12

13  If payment is to be made by electronic funds transfer, Shak shall contact Tonia King or her

14  successor at the address above to receive payment instructions and shall fully comply with those

15  instructions.  Shak shall accompany payment of the CMP Obligation with a cover letter that

16  identifies Shak and the name and docket number of this proceeding.  Shak shall simultaneously

17  transmit copies of the cover letter and the form of payment to the Chief Financial Officer,

18  Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW,

19  Washington, DC 20581.  Shak shall also transmit a copy of the cover letter and the form of

20  payment to Rick Glaser, Deputy Director, Commodity Futures Trading Commission, Three

21  Lafayette Centre, 1155 21st Street, NW, Washington, DC 20581.

22         59.      Partial Satisfaction: Acceptance by the Commission of any partial payment of

23  Shak's CMP Obligation shall not be deemed a waiver of his obligation to make further payments

24  pursuant to this Consent Order, or a waiver of the Commission's right to seek to compel payment

25  of any remaining balance.

26

27

28

14

1  ## VI.    MISCELLANEOUS PROVISIONS

2      60.    Notice: All notices required to be given by any provision in this Consent Order

3  shall be sent certified mail, return receipt requested, as follows:

4  Notice to Commission:

5      Rick Glaser
       Deputy Director, Division of Enforcement
6      Commodity Futures Trading Commission
       Three Lafayette Centre
7      1155 21st Street NW
       Washington, DC 20581
8

9  Notice to Shak:

10     Melvin A. Brosterman
       Hogan Lovells
11     390 Madison Avenue
       New York, New York 10017
12

13  All such notices to the Commission shall reference the name and docket number of this action.

14     61.    Change of Address/Phone: Until such time as Shak satisfies in full his CMP

15  Obligation as set forth in this Consent Order, Shak shall provide written notice to the Commission

16  by certified mail of any change to his telephone number and mailing address within ten calendar

17  days of the change.

18     62.    Entire Agreement and Amendments: This Consent Order incorporates all of the

19  terms and conditions of the settlement among the parties hereto to date. Nothing shall serve to

20  amend or modify this Consent Order in any respect whatsoever, unless: (a) reduced to writing;

21  (b) signed by all parties hereto; and (c) approved by order of this Court.

22     63.    Invalidation: If any provision of this Consent Order or if the application of any

23  provision or circumstance is held invalid, then the remainder of this Consent Order and the

24  application of the provision to any other person or circumstance shall not be affected by the

25  holding.

26     64.    Waiver: The failure of any party to this Consent Order at any time to require

27  performance of any provision of this Consent Order shall in no manner affect the right of the

28

1   party at a later time to enforce the same or any other provision of this Consent Order.  No waiver

2   in one or more instances of the breach of any provision contained in this Consent Order shall be

3   deemed to be or construed as a further or continuing waiver of such breach or waiver of the

4   breach of any other provision of this Consent Order.

5         65.    Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this

6   action to ensure compliance with this Consent Order and for all other purposes related to this

7   action, including any motion by Shak to modify or for relief from the terms of this Consent Order.

8         66.    Injunctive and Equitable Relief Provisions:  The injunctive and equitable relief

9   provisions of this Consent Order shall be binding upon Shak, upon any person under his authority

10   or control, and upon any person who receives actual notice of this Consent Order, by personal

11   service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or

12   participation with Shak.

13         67.    Counterparts and Facsimile Execution:  This Consent Order may be executed in

14   two or more counterparts, all of which shall be considered one and the same agreement and shall

15   become effective when one or more counterparts have been signed by each of the parties hereto

16   and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all

17   parties need not sign the same counterpart.  Any counterpart or other signature to this Consent

18   Order that is delivered by any means shall be deemed for all purposes as constituting good and

19   valid execution and delivery by such party of this Consent Order.

20         68.    Contempt:  Shak understands that the terms of the Consent Order are enforceable

21   through contempt proceedings, and that, in any such proceedings he may not challenge the

22   validity of this Consent Order.

23         69.    Agreements and Undertakings:  Shak shall comply with all of the undertakings

24   and agreements set forth in this Consent Order.

25         There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this

26   *Consent Order for Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief*

27   *Against Defendant Daniel Shak.*  forthwith and without further notice.

28

1  **IT IS SO ORDERED** on this ___9___ day of _____April_____, 2024.

2

3

4  Honorable Gloria M. Navarro
   **UNITED STATES DISTRICT JUDGE**

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENTED TO AND APPROVED BY:

Defendant Daniel Shak

**Daniel Shak**

Date: 03/15/2024

Approved as to form:

Robert McCoy, No. 9121
Sihomara L. Graves, No. 13239
Briana Martinez, No. 14919
1980 Festival Plaza Drive, Suite 650
Las Vegas, Nevada 89135

HOGAN LOVELLS US LLP
Melvin A. Brosterman (*pro hac vice*)
Elizabeth Milburn (*pro hac vice*)
390 Madison Avenue
New York, New York 10017

*Counsel for Defendant*

Dated March 15, 2024

Commodity Futures Trading Commission

James H. Holl, III (*pro hac vice*)
Brian A. Hunt, (*pro hac vice*)
Three Lafayette Centre
1155 21st Street, N.W.
Washington, D.C. 20581

*Counsel for Plaintiff*
Date:   April 5, 2024

18